UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIC LIESER**,                                            Case No. 5:10 CV 2314

           Petitioner,                        Judge James Gwin


       v.                                        REPORT AND RECOMMENDATION

**MICHELLE MILLER**,

           Respondent.                    Magistrate Judge James R. Knepp II


## Introduction

Petitioner Eric Lieser, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden Michelle Miller, filed a Return of Writ. (Doc. 5). Petitioner then filed a Traverse. (Doc. 11). The District Court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated January 18, 2011). For the reasons discussed below, the undersigned recommends the Petition be denied.

## Background

Factual Background and State Court Proceedings

For purposes of habeas corpus review of state court decisions, findings of facts made by a state court are presumed to be correct and can only be contravened if the habeas petitioner can show, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record. *Id.* Petitioner has not presented such clear and convincing evidence in his Petition to contravene the

state court of appeals' recitation of the facts, and does not object to them except for omitted facts

(Doc. 11, at 1):

> {¶ 2}On October 16, 2007, the Stark County Grand Jury indicted Appellant on one count of robbery, in violation of R.C. 2911.02(A)(2). The indictment stated that on or about July 7, 2007, Appellant 'did, in attempting, or committing a theft offense, or in fleeing immediately after the attempt or offense, inflict, attempt to inflict, or threaten to inflict physical harm on Sally Taylor.' According to the stipulated facts, on July 7, 2007, Appellant approached Ms. Taylor, age 65, in the parking lot of a Fishers grocery store. As Ms. Taylor was getting into her vehicle, Appellant pulled her out, grabbed her purse and threatened her with physical harm. Ms. Taylor managed to get her purse back, but Appellant pushed her away and fled in Ms. Taylor's vehicle. Several hours later, Appellant was arrested in the stolen vehicle. Ms. Taylor later identified Appellant from a photo array.

> {¶ 3}Appellant was arraigned on October 19, 2007 and he pleaded not guilty to the charge. On November 19, 2007, Appellant filed a motion for determination of his mental competence. The trial court ordered an evaluation of Appellant's competence and evaluation of his mental condition at the time of the offense. On November 16, 2006, Appellant was in an automobile accident wherein he suffered a traumatic brain injury. He also had a history of substance abuse, including alcohol and drugs. The trial court, upon the receipt of the results of the examination, found Appellant incompetent to stand trial. The trial court ordered Appellant to enter Heartland Behavioral Healthcare Center for treatment for purposes of restoring Appellant to competency.

> {¶ 4}Three months later, the trial court held a hearing to determine Appellant's competence to stand trial. Heartland Behavioral Healthcare submitted a competency restoration report to the trial court. Appellee stipulated to the report, but Appellant objected to the 'contents' of the report. The trial court overruled Appellant's objection and the trial court admitted the report. The trial court then found Appellant competent to stand trial.

> {¶ 5} On March 7, 2008, Appellant changed his plea from "not guilty" to "not guilty by reason of insanity."

> {¶ 6} Appellant then waived his right to trial by jury and stipulated to the facts of the robbery offense. On August 18, 2008, he proceeded to a trial to the court only on the affirmative defense of not guilty by reason of insanity. Following the presentation of witnesses and arguments to the trial court, the trial court found Appellant guilty of robbery, as set forth in R.C. 2911.02(A)(2). The trial court sentenced Appellant to four years in prison.

2

*Ohio v. Lieser*, 2009 Ohio 2502, ¶ ¶ 2–6 (Ohio App. Ct. 2009) (Doc. 5-1, at 121-122).

Appellant timely appealed. (Doc. 5-1, at 41). Relevant to the instant proceeding, Petitioner's three grounds of appeal included the following assignment of error: "The Defendant was deprived of his right to Due Process under the Ohio and U.S. Constitutions because the trial court improperly admitted the expert report when it found the Defendant competent to stand trial." (Doc. 5–1, at 44). The State filed a response brief. (Doc. 5-1, at 99). The appellate court issued an opinion and judgment entry on May 26, 2009, overruling all three of Petitioner's assignments of error and affirming the judgment of the trial court. *Ohio v. Lieser*, 2009 Ohio 2502 (Ohio App. Ct. 2009) (Doc. 5-1, at 120).

Petitioner then filed a timely appeal to the Ohio Supreme Court. (Doc. 5-1, at 135). In his memorandum in support of jurisdiction, he presented two propositions of law:

> FIRST PROPOSITION OF LAW: An accused is denied due process when, over defense objection, a trial court admits the written report of a non-testifying expert at a competency hearing, in violation of R.C. 2317.36. Fifth and Fourteenth Amendments to the United States Constitution; Section 10, Article I of the Ohio Constitution.

> SECOND PROPOSITION OF LAW: An accused is denied the right to confront the witnesses against him when a trial court admits the written report of a non-testifying expert at a competency hearing. *Crawford v. Washington*, 541 U.S. 36 (2004). Sixth and Fourteenth Amendments to the United States Constitution; Sections 10 and 16, Article I of the Ohio Constitution.

(Doc. 5-1, at 139). The state filed a brief opposing jurisdiction. (Doc. 5-1, at 167). On October 14, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 5-1, at 182).

Federal Habeas Corpus

Petitioner filed his Petition seeking a  writ of habeas corpus pursuant to 28 U.S.C. § 2254

on October 12, 2010. He asserts the following sole ground for relief:

> **GROUND ONE:** The trial court violated Mr. Lieser's right to confront the witnesses against him when it admitted into evidence the written report of a non-testifying expert, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. 1, at 5).

## Standard of Review

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

## Analysis

The Sixth Amendment to the United States Constitution guarantees criminal defendants the

4

right to confront witnesses against them. U.S. Const. Amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"). A criminal defendant's confrontation rights are fundamental rights, enforced against the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The primary goal of the Confrontation Clause "was to prevent depositions or ex parte affidavits" from being used against a defendant "in lieu of a personal examination and cross-examination of the witness". *Barber v . Page*, 390 U.S. 719, 721 (1968). Preserving the right of cross-examination is a paramount interest behind the Confrontation Clause; the Supreme Court has called cross-examination the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 157–158 (1970) (quoting *Mattox v. United States*, 156 U.S. 237, 242 (1895)). Petitioner argues his Confrontation Clause rights were violated when the state trial judge admitted the report of Drs. Sales and Seibel (the Heartland Behavioral report) for purposes of determining his competence to stand trial. The trial court accepted the results of the report over Petitioner's objection to its contents. (Doc. 5-4, at 5).

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court revised the standard for when the admission of hearsay statements in criminal cases violates the Confrontation Clause. The Court rejected the view that the Confrontation Clause only applies to in-court testimony and that its application to out-of-court statements merely depends on the applicable rules of evidence. *Id.* at 50–51, 61 ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'"). Instead, the Court held out-of-court statements that are testimonial are not admissible unless both the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 54.

5

There remains a question in this case as to whether a report produced for the purpose of a competence to stand trial hearing is a testimonial statement. In *Crawford*, the Court remarked on the nature of testimonial statements:

> Various formulations of this core class of 'testimonial' statements exist: 'ex parte in-court testimony or its functional equivalent - that is, materials such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially', . . . 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use *at a later trial*'.

*Crawford*, 541 U.S. at 51–52 (internal citations omitted) (emphasis added). Because the report was produced for the purpose of informing the trial court on Petitioner's competence to stand trial, an objective witness would not reasonably believe the report would be available for use at a later trial. Rather, an objective witness would reasonably believe the report would be used at a hearing to determine whether Petitioner was competent to stand trial, and nowhere else. Nonetheless, considering the *Crawford* Court was purposely imprecise on the definition of testimonial, this Court will err on the side of caution and assume the report in question qualifies as a testimonial statement.

Even assuming the report was testimonial, Petitioner's confrontation rights were not violated. First, several Supreme Court decisions refer to confrontation rights as being only trial rights. *See, e.g.*, *Pennsylvania v. Ritchie*, 480 U.S. 39, 52–53 (1987) ("[t]he opinions of this Court show that the right to confrontation is a *trial* right") ("We simply hold that with respect to this issue, the Confrontation Clause only protects a defendant's trial rights[.]"); *see also Barber v. Page*, 390 U.S. 719, 725 (1968) ("[t]he right to confrontation is basically a trial right"); *California v. Green*, 399 U.S. 149, 157 (1970) ("it is this literal right to 'confront' the witness at the time of trial that forms

6

the core of the values furthered by the Confrontation Clause"); *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) ("[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact."). This is also the perspective through which the state appellate court viewed Petitioner's Confrontation Clause argument. The Ohio Fifth District Court of Appeals equated a pretrial competence hearing to a pretrial suppression hearing, to which the court had previously held the *Crawford* rule does not apply. *Ohio v. Lieser*, 2009 Ohio 2502, ¶ 47 (Ohio App. Ct. 2009) (Doc. 5-1, at 132). In light of the Supreme Court's repeated language extending confrontation rights only to trials, this Court cannot say the state trial or appellate courts' decisions were contrary to, or unreasonable applications of, clearly established federal law.

Second, Petitioner's argument is dependent upon confrontation rights at competence hearings being clearly established, but the cases implying confrontation rights could exist beyond the scope of trials (such as at pretrial hearings) do not *clearly establish* such rights. For instance, in *Coy v. Iowa*, the Court said in dicta that the "right to face-to-face confrontation at some point in the proceedings other than the trial itself" has in the past been a right asserted as reasonably implicit. 487 U.S. at 1020 (citing *Kentucky v. Stincer*, 482 U.S. 730 (1987)). Petitioner argues *Stincer* and *Pate v. Robinson*, 383 U.S. 375 (1966), establish the constitutional principle he now asserts (Doc. 11, at 8), but these cases do not clearly establish the competence hearing confrontation rights Petitioner claims.

In *Pate*, the Supreme Court held that a criminal defendant has the constitutional right to a competence hearing. *Pate*, 383 U.S. 375, 386 (1966) ("Having determined that Robinson's constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial, we direct that the writ of habeas corpus must issue . . .."). However, the court reached

7

this conclusion because of the inherent flaw in obtaining a waiver of competence from a potentially incompetent defendant. The *Pate* Court reasoned, "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id.* at 384. The case does not clearly establish any proposition of law regarding confrontation rights; it merely held that an adequate hearing on the issue of the defendant's competence was constitutionally required given the amount of evidence produced showing the defendant's incompetence. *Id.* at 838, 842. The court did not elaborate on whether an "adequate" hearing required confrontation rights, leaving no room to say *Pate* clearly established them at a competence hearing.

In *Stincer*, the defendant was excluded from a hearing to determine whether a child witness was competent to testify. *Stincer*, 482 U.S. at 733. The Court said the appropriate question for determining whether a defendant's confrontation rights have been violated is not whether a particular proceeding is critical to the outcome of the trial, but, rather, whether there has been any interference with the defendant's opportunity for effective cross-examination. *Id.* at 744. The Court said cross-examination is a "'functional' right designed to promote reliability in the truth-finding functions of a criminal trial." *Id.* at 737. But *Stincer* was about a pretrial hearing to determine whether a child witness was competent to testify; it was not a pretrial hearing to determine whether the defendant was competent to stand trial. *Id.* at 739. The two different kinds of competence hearings serve fundamentally different purposes, and the denial of confrontation rights at them has distinguishable consequences. That is, a hearing to determine the competence of a witness to testify could unfairly impact a defendant's cross-examination rights by mistakenly allowing an incompetent witness to testify and be cross-examined. Allowing a witness to testify when he should have been

8

declared incompetent to be a witness may prevent a defendant from having the "opportunity for effective cross-examination" that the Confrontation Clause guarantees. *See id.* at 739. Competence to testify hearings at least impact cross-examination rights, but the determination of whether a defendant is competent to stand trial does not directly affect his opportunity to cross-examine the witnesses against him. So, if confrontation rights do apply to some pretrial hearings, there is a logical reason why they may apply to witness competence hearings but not competence to stand trial hearings. This is speculative, though, as such rights have not been clearly established under federal law.

Petitioner points out that Ohio recognizes confrontation rights at competence hearings via statute. (Doc. 11, at 4); Ohio Rev. Code § 2317.36. Unfortunately for Petitioner, "federal law as determined by the Supreme Court of the United States" has not yet recognized such rights, much less clearly established them. As a result, the trial court's acceptance of the Heartland Behavioral report was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner's only ground must fail under the standard set by 28 U.S.C. § 2254(d).

### Conclusion and Recommendation

Petitioner's only ground fails because the state courts did not make a decision contrary to, or involving an unreasonable application of, clearly established federal law. The undersigned recommends the Petition be denied and dismissed.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).